820 P.2d 1323

**GOLDEN CONE CONCEPTS, INC., a New Mexico corporation, d/b/a Pam's Ice Cream, Plaintiff–Appellee,**

v.

**VILLA LINDA MALL, LTD., a New Mexico limited partnership; Villa Linda Mall Company, a Texas limited partnership; and Herring Marathon Group, Inc., a Delaware corporation, Defendants–Appellants.**

No. 19367.

Supreme Court of New Mexico.

Nov. 21, 1991.

Rehearing Denied Dec. 13, 1991.

Sutin, Thayer & Browne, Ronald E. Segel, Mary E. McDonald, Albuquerque, for defendants-appellants.

Roth, VanAmberg, Gross & Rogers, F. Joel Roth, Santa Fe, for plaintiff-appellee.

OPINION

FRANCHINI, Justice.

█ We have granted appellee's motion for rehearing. The opinion filed September 24, 1991, is hereby withdrawn, and this opinion is substituted therefore. Defendant below, Villa Linda Mall (Mall), in Santa Fe, New Mexico, celebrated its grand opening on July 31, 1985. In October of that year, plaintiff Golden Cone Concepts, Inc. (Golden Cone) signed a ten-year lease for space in the Mall's food court. Golden Cone operated an ice cream business for four months before filing suit against the Mall to rescind the lease and recover damages.[1] Following a bench trial[2], the district court rescinded and canceled the lease, awarded $105,723.00 in restitutionary special damages, $22,000.00 in attorney fees, and $1,190.77 in costs. In addition, the court awarded $50,000.00 in punitive damages based upon the court's conclusion that the Mall committed fraud, negligent misrepresentation, and constructive fraud upon Golden Cone in executing the lease. The Mall's counterclaim for rent was dismissed by the district court. We affirm in part and reverse in part.

Prior to executing the lease, the parties held many meetings, discussions, and negotiations concerning the food court facilities and lease terms. The district court entered numerous findings of fact regarding representations made to the Golden Cone principals by the Mall's leasing agent and marketing director, concerning the planning and development of the mall, past development successes, the trade area and "regional mall" idea, the food court concept, location of the ice cream business within the mall in relation to the movie theater, other prospective food court tenants including national fast food chains, and projected gross annual sales for the ice cream busi-

---

1. Golden Cone's complaint alleged six counts—three based upon rescission of the lease and three seeking compensatory damages for alleged fraud, negligent misrepresentation and constructive fraud. The court granted the Mall's motion to compel an election of remedies with Golden Cone electing to pursue the remedy of rescission. *See Smith v. Galio*, 95 N.M. 4, 8, 617 P.2d 1325, 1329 (Ct.App.1980) (when one remedy depends upon affirmance of a contract and another remedy depends upon the opposite, the remedies are inconsistent and the party seeking relief must elect one of them).

2. Rescission is an equitable remedy to be tried by the court without a jury. SCRA 1986, 13–814 committee commentary.

ness based on the agent's knowledge of sales of other food vendors. The leasing agent assured Golden Cone that it would be the only ice cream business in the food court and that it could remain open past 9:00 p.m. to serve late movie goers.

The district court also found that Golden Cone's reliance on the representations led to its willingness to pay high rent, make leasehold improvements, and purchase equipment. Golden Cone's gross sales and the number of customers visiting the Mall were below the projections made by the Mall's agents. After closing its business Golden Cone owed rent and other charges to the Mall in the amount of $10,939.32. The Mall relet the premises as of December 1, 1987.

The following issues are raised on appeal:

(1) Whether the district court erred in allowing Golden Cone to proceed on its claims of fraud, negligent misrepresentation, and constructive fraud in light of an integration and exculpatory clause in Article 33 of the lease;

(2) Whether the district court erred in ruling that the representations concerning projected revenues were actionable as a matter of law;

(3) Whether nondisclosure of complaints of low mall traffic is a sufficient basis upon which to rescind the lease;

(4) Whether substantial evidence exists to support the findings of fact regarding representations regarding the identity of other food court tenants, traffic flow at the mall, the role of a food court, and Golden Cone's justifiable reliance upon representation concerning projected revenues;

(5) Whether the court erred in dismissing the Mall's counterclaim for unpaid rent;

(6) Whether the judgment amount is consistent with the court's finding of an offset for "minimum annual rental and other charges not paid" during Golden Cone's occupancy; and

(7) Whether substantial evidence supports the awards of punitive damages and attorney fees to Golden Cone.

## LEASE PROVISION

■ The Mall asserts the following provision in the lease bars the misrepresentation claims made by Golden Cone:

It is understood and agreed by Tenant that Landlord and Landlord's agents have made no representations or promises with respect to the leased premises or the making or entry into this lease, except as in this lease expressly set forth, and that no claim or liability, or cause for termination, shall be asserted by Tenant against Landlord for, and Landlord shall not be liable by reason of, the breach of any representations or promises not expressly stated in this lease.

With regard to this provision, Golden Cone contends that the exculpatory clause argument by the Mall is being raised for the first time on appeal. The district court, however, entered a finding of fact relating to the lease provision, identical to the Mall's requested finding, stating:

The attorney for [Golden Cone] specifically brought to [its] attention the provisions of Article 33 of the lease which states, among other things, that no representations have been made to the tenant by the landlord unless specifically set forth in the lease.

The finding demonstrates that the provision was brought to the court's attention and was considered before it decided to rescind the lease. Additionally, in New Mexico exculpatory clauses do not preclude liability. *Western States Mechanical Contractors, Inc. v. Sandia Corp.*, 110 N.M. 676, 798 P.2d 1062 (Ct.App.), *cert. denied*, 110 N.M. 653, 798 P.2d 1039 (1990).

Where one party to the contract has perpetrated a fraud upon the other, by means of which the latter was induced to enter into the contract, [one] cannot be precluded from seeking redress by a provision inserted in the contract by the party perpetrating the fraud, designed to shut the mouth of the adverse party as to such fraudulent representations which led up to the making of the contract. And this is true, whether the action be

for rescission of the contract or for damages for deceit.

*Berrendo Irrigated Farms Co. v. Jacobs,* 23 N.M. 290, 296, 168 P. 483, 484 (1917). After the district court ordered Golden Cone to elect its remedy, it correctly permitted Golden Cone to proceed on its claims despite the language in Article 33 of the lease.

## REPRESENTATIONS OF PROJECTED REVENUES

■ The district court found that the Mall's leasing agent represented to Golden Cone that its gross sales in the first year of business would be $300,000.00. This statement was found to be reckless and misleading and that Golden Cone justifiably relied thereon in entering into the lease. The court concluded that the representation was one of fact rather than opinion, justifiably relied upon by Golden Cone, which gave rise to the right to rescind the lease.

■ We disagree with the Mall's contention that the court erred as a matter of law in its ruling that fraud could be premised upon promises or conjectures as to future acts or events. When a party is challenging a legal conclusion, the standard for review is whether the law correctly was applied to the facts, viewing them in a manner most favorable to the prevailing party, indulging all reasonable inferences in support of the court's decision, and disregarding all inferences or evidence to the contrary. *Texas Nat'l Theatres, Inc. v. City of Albuquerque,* 97 N.M. 282, 639 P.2d 569 (1982).

Unlike the circumstances presented by this case, the Mall's reliance on *Berrendo* and those cases cited from other jurisdictions are distinguishable in that they involved the sales of existing businesses with representations made by the seller concerning future income, rather than representations concerning projected revenues for a new business enterprise under circumstances such as these. *Register v. Roberson Construction Co.,* 106 N.M. 243, 741 P.2d 1364 (1987), stated the following on promises concerning future events to support an action for fraud:

While it is true that an action for fraud will ordinarily not lie as to a pattern of conduct based on promises that future events will take place, there are nonetheless the following well-established exceptions to this rule ... where the promises are based on contrary facts peculiarly within the promisor's knowledge, or where the promise is based on a concealment of known facts. Further, if the promise as to future events is part of an overall pattern designed to lead a party to act to his/her detriment, and in such a way as harmfully to alter a legal right possessed by the party, then promises as to future actions will support an action for fraud, especially in a situation where the defendant states an opinion or belief as to future occurrences which are shown to have had no support by the facts at the time the opinions or beliefs were given.

*Id.* at 246, 741 P.2d at 1367 (citations omitted). Accordingly, the district court was correct to permit the representations of projected revenues to serve as a basis for Golden Cone's claims.

## NONDISCLOSURE AS A BASIS FOR RESCISSION

■ The Mall claims that nondisclosure to Golden Cone of complaints of low mall traffic is insufficient as a matter of law to rescind the lease. The uncontested finding of fact, however, that the Mall had a pattern of conduct of gaining prospective tenants' confidence, triggered the Mall's duty to disclose information about low levels of mall traffic under *R.A. Peck, Inc. v. Liberty Federal Savings Bank,* 108 N.M. 84, 766 P.2d 928 (Ct.App.1988).

Whether a duty exists is generally a question of law for the trial court to decide. *Schear v. Board of County Comm'rs,* 101 N.M. 671, 687 P.2d 728 (1984). Several types of relationships between parties give rise to the duty to disclose—one being where it appears that one or each of the parties to the contract expressly reposes a trust and confidence in the other. *Peck,* 108 N.M. at 89, 766 P.2d at 933. Other findings of fact entered by the court indicate that the Mall had received reports

from several food vendors regarding lack of traffic before signing the lease with Golden Cone. The court found that:

> Prior to [Golden Cone] signing its lease, the [Mall] had already received complaints from a food court tenant about the lack of customers in the Mall and food court, which they did not tell [Golden Cone.] While [Golden Cone] continued to construct its leasehold space and purchase equipment, the [Mall was] receiving many complaints from various food court tenants and other tenants at the Mall about the lack;ack [sic] of customers coming to the Mall and low gross sales, which they did not tell [Golden Cone].

One month after opening, the Mall offered Golden Cone rent relief due to a lack of customers. As found by the court, Golden Cone "was shocked to find out that [the Mall] had been receiving complaints about the lack of customers and low sales before it had signed the lease and during the construction of its leasehold space and that the information had not been told to [Golden Cone]." As discussed in the following section, the owners of Golden Cone were newcomers to the food vending business, and, where traffic flow information was peculiarly within the Mall's knowledge, a continuing duty on the part of the Mall existed to disclose these material facts to the prospective lessee. Therefore, under these circumstances, nondisclosure was a proper basis for rescission.

SUBSTANTIAL EVIDENCE ISSUES

■ The Mall alleges that Golden Cone offered no substantial evidence of misrepresentations or justifiable reliance. The Mall also challenges the punitive damages award, which will be discussed later in this opinion, and alleges conflict between the court's findings and its conclusion that the Mall committed negligent misrepresentation, constructive fraud, and fraud against Golden Cone. Our review of the record proper and proceedings indicate that substantial evidence exists to support the court's findings of negligent misrepresentation, constructive fraud and fraud based upon the representations made and nondis-

closure of facts concerning traffic at the Mall.

■ "A negligent misrepresentation is one where the speaker has no reasonable ground for believing that the statement made was true." SCRA 1986, 13–819. The degree of proof required of a party asserting negligent misrepresentation is a preponderance of the evidence. *State ex rel. Nichols v. Safeco Ins. Co.*, 100 N.M. 440, 671 P.2d 1151 (Ct.App.), *cert. denied*, 100 N.M. 327, 670 P.2d 581 (1983). Negligent misrepresentation is grounded in negligence rather than an intent to deceive. *Id.* The district court's findings that the principals of Golden Cone "had no retail operating experience with shopping malls," that the representations made by the Mall's agents concerning daily car traffic, national food chains, and the food court's function as an anchor store encompassed information only within its scope of knowledge, and that the Golden Cone principals were justified in their reliance thereon, all are supported by substantial evidence and support the court's conclusion of negligent misrepresentation.

■ Breach of a legal or equitable duty is constructive fraud and it is not necessary to prove actual dishonesty of purpose nor intent to deceive. *Archuleta v. Kopp*, 90 N.M. 273, 276, 562 P.2d 834, 837 (Ct.App.) *cert. denied*, 90 N.M. 636, 567 P.2d 485 (1977). A finding of constructive fraud need not be based upon a fiduciary relationship between the parties, as constructive fraud is defined as "acts contrary to public policy, to sound morals, to the provisions of a statute, etc., however honest the intention with which they may have been performed." *Wolf & Klar Cos. v. Garner*, 101 N.M. 116, 118, 679 P.2d 258, 260 (1984). Although not required as proof of a claim of constructive fraud, several of the court's findings indicate that the representations at issue were made with the intent to deceive. Another uncontested finding refers to the Mall's pattern of conduct of making representations for the purpose of gaining confidence of prospective tenants and inducing them into entering a lease contrary to equitable principles of

fairness, justice, and right dealing that dominate all commercial practices and dealings. *See Newman v. Basin Motor Co.*, 98 N.M. 39, 644 P.2d 553 (Ct.App.1982).

■ A successful fraud claim must prove a misrepresentation of fact, known by the maker to be untrue, made with the intent to deceive and to induce the other party to act upon it, and upon which the other party relies to his detriment. *See Poorbaugh v. Mullen*, 96 N.M. 598, 601, 633 P.2d 706, 709 (Ct.App.1981) (*Poorbaugh I*). Though each element of fraud must be shown by clear and convincing evidence, if disputed, a reviewing court will resolve all conflicting evidence in favor of the prevailing party. *Poorbaugh v. Mullen*, 99 N.M. 11, 653 P.2d 511 (Ct.App.), *cert. denied*, 99 N.M. 47, 653 P.2d 878 (1982) (*Poorbaugh II*). On appeal, our duty is to liberally construe the trial court's findings in order to sustain a judgment. *Arnold v. Ford Motor Co.*, 90 N.M. 549, 566 P.2d 98 (1977). Based upon our review of the record, and as discussed above, we find that the required level of proof was established and the evidence supports the court's findings of fraud by representations and nondisclosure.

■ The Mall also challenges the court's findings that Golden Cone justifiably relied upon the representations regarding projected revenues of $300,000.00 per year. Our review of the record, as well as the unchallenged findings of fact, support the court's findings on this point. The principals of Golden Cone had never operated a business in a food court of a shopping mall and were entitled to rely on the Mall's representations regarding material facts peculiar to this type of location. *See Ledbetter v. Webb*, 103 N.M. 597, 602, 711 P.2d 874, 879 (1985). Misrepresentation of a material fact, even if innocently made, will entitle the party who has justifiably relied thereon to rescind the contract. *Prudential Ins. Co. v. Anaya*, 78 N.M. 101, 428 P.2d 640 (1967). Ordinarily the question of materiality is one of fact. *Modisette v. Foundation Reserve Ins. Co.*, 77 N.M. 661, 427 P.2d 21 (1967). The finding of reliance upon the Mall's representation of projected revenues is supported by substantial evidence.

## DISMISSAL OF COUNTERCLAIM

The Mall grounds its argument that it is entitled to judgment on its counterclaim for unpaid rent upon the premise that the lease was enforceable and not subject to rescission. Based upon all of the above, however, we find no abuse of discretion by the district court and affirm the dismissal of the counterclaim.

## OFFSET OF JUDGMENT

The evidence supports the Mall's claim that the court's judgment failed to incorporate the finding of fact that "[a]ny rescission damages will be offset by $10,939.32." Accordingly, we remand with instruction to reduce the restitutionary special damages by this amount. *See Mendez v. Southwest Community Health Servs.*, 104 N.M. 608, 612, 725 P.2d 584, 588 (Ct. App.), *cert. quashed*, 104 N.M. 632, 725 P.2d 832 (1986) (when finding conflicts with conclusion or judgment, finding will prevail as long as it is supported by substantial evidence).

## PUNITIVE DAMAGES

■ The district court awarded punitive damages based on the reckless or grossly negligent acts of the Mall. The court found that representations made by the Mall concerning projected revenues and car counts were made recklessly with the intent to deceive and the representations made concerning national chain food vendors were untrue and made with the intent to deceive. As to the representation the food court would serve the same as an anchor store, the district court found the statement to be recklessly made and misleading. The Mall argues that the court made no specific findings of fact of gross negligence and further claims that the award of punitive damages is not supported by substantial evidence.

■ We stated in *Romero v. Mervyn's*, 109 N.M. 249, 784 P.2d 992 (1989), that "punitive damages may be recovered for breach of contract when the defendant's conduct was malicious, fraudulent, oppres-

sive, or committed recklessly with a wanton disregard for plaintiff's rights." *Id.* at 255, 784 P.2d at 998. Any of the listed terms, standing alone, will support an award of punitive damages. *Id.* The substantial evidence that supports the district court's finding of fraud, as stated herein, also supports the court's finding of intentional deceit because intentional deceit is one of the elements of fraud. *See Poorbaugh I,* 96 N.M. at 601, 633 P.2d at 709. In addition, there is substantial evidence to support the trial court's findings as to the Mall's reckless conduct. Accordingly, we affirm the district court's award of punitive damages.

### ATTORNEY FEES

■ We reverse the court's award of attorney fees. Rescission of the lease, which contained a provision for attorney fees, precluded any basis for such an award. Absent a specially authorizing statute or agreement, each party to a lawsuit bears its own attorney fees. *First Nat'l Bank of Clovis v. Diane, Inc.,* 102 N.M. 548, 698 P.2d 5 (Ct.App.1985). The trial court incorrectly relied upon the lease provision in making its awards, and, accordingly, we reverse.

Based upon the above, the judgment is affirmed in part, reversed in part, and remanded to the district court for entry of judgment consistent with this opinion.

IT IS SO ORDERED.

RANSOM, C.J., and BACA, J., concur.